

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00215-CV

**IN THE INTEREST OF L.S.** and C.S., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2019PA00541
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
    Luz Elena D. Chapa, Justice
    Irene Rios, Justice

Delivered and Filed: October 6, 2020

AFFIRMED

In this parental rights case, the trial court determined it was in the children's best interests to appoint Dad's mother (Grandma) as primary managing conservator and to appoint Mom as a possessory conservator.[1]  Mom argues there was insufficient evidence to support the order.  We affirm the trial court's order.

### BACKGROUND

On August 15, 2018, Mom and Dad were in a physical altercation while L.S. was present and Mom was pregnant with C.S.[2]  Universal City law enforcement responded to the verbal

---

[1] We use aliases to protect the children's identities.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).
[2] Mom and Dad were appointed as possessory conservators, but Dad did not appeal.  We recite only the facts pertaining to Mom and the children.

disturbance and reported the incident to the Department of Family and Protective Services, but Mom neither wanted to leave Dad nor secure a protective order.

On October 26, 2018, due to ongoing domestic violence between the parents while L.S. lived in the home, the parents were referred to Family Based Safety Services, and a safety plan was put in place.

By January 25, 2019, Mom had given birth to C.S., and both children were staying with Grandma as part of the safety plan. Mom went to Grandma's house and became aggressive and hostile, screaming at her. San Antonio law enforcement responded to the incident and admonished Mom not to go to Grandma's house where the children were present. Mom yelled at them as well.

On March 15, 2019, Mom tried to take C.S. from his daycare facility in violation of the safety plan, but daycare employees stopped her. Mom became very loud, insisting that the daycare director talk to Mom's attorney on the phone, but the Director declined and called the police instead. Mom left the daycare once police arrived.

On March 19, 2019, Mom went to Grandma's house for a supervised visit with the children. Mom was agitated when she arrived. She played with the children inside but then tried to take the children against Grandma's objection by handing them over the backyard gate to someone outside who had followed Mom to the visit. Mom punched Grandma in the face and threw her on the ground. Mom bit Grandma on the hands and hit her multiple times. Mom and her accomplice ran away without the children but remained nearby, and Grandma called the police. When police arrived, Mom yelled at them and then left with her accomplice. Mom's car was still at Grandma's house, and Grandma left with the children for safety reasons.

On March 21, 2019, the Department requested temporary managing conservatorship of L.S. and C.S. The Department noted that Mom continued to "act out" in front of L.S. and C.S. and she lacked the capacity to protect them.

At the initial permanency hearing on September 9, 2019, the trial court found that Mom was complying with her service plan and would continue to do so. At a later permanency hearing on December 12, 2019, the trial court found that Mom demonstrated adequate and appropriate *partial* compliance with her service plan. At the time of trial for primary and possessory conservatorship, Mom had completed several of her service plan requirements, but she had not established stable housing on her own nor completed her individual counseling. Mom's caseworker said that she had not yet received proof of Mom's income, and Mom had paid very little of her required child support.

All parties except Mom agreed that Grandma should be the primary conservator and that the parents should be possessory conservators with supervised visitation rights. Mom testified that she preferred to have unsupervised overnight visits on the weekend, but in its ruling, the trial court expressed doubt as to her credibility and reliability: "Now, I understand what mom is saying, but, I mean, there's just been -- I mean, I'd love to say we could trust mom. But I could just see this situation playing. If you give them up for a weekend to go have an overnight, and she decides, 'You know, these kids need their mother. I'm not giving them back.' Then what happens?" Furthermore, the Department objected to Mom's suggestion because she was staying with her mother who has a history with Child Protective Services. Mom's individual therapist also testified that Mom missed appointments and had not made progress in working toward personal accountability.

The trial court appointed Grandma as the primary managing conservator and Mom as a possessory conservator. It ordered that, for now, visitation could be arranged by agreement with Grandma, but if the parties did not reach another agreement, then Mom would be permitted to have up to three two-hour supervised visits with the children per month. Mom appeals.

**INSUFFICIENT EVIDENCE FOR CONSERVATORSHIP ORDER**

In her sole issue, Mom argues there was insufficient evidence to support the trial court's conservatorship order and that the trial court abused its discretion. Mom argues that she made a good faith effort to follow her family service plan and that there was no evidence suggesting that the children's physical health and emotional development required the assignment of a non-parent conservator.

The Department contends that the evidence was sufficient to support the trial court's order, specifically because Mom had assaulted Grandma, Mom was not making enough money to support the children, she had not completed her family service plan, and she was not prepared to be a managing conservator.

We briefly recite the evidentiary and appellate review standards.

**A.      Standard of Review**

"Conservatorship determinations . . . are subject to review only for abuse of discretion, and may be reversed only if the decision is arbitrary and unreasonable." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *accord In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE ANN. § 153.002; *accord In re J.A.J.*, 243 S.W.3d at 614. In its conservatorship determination, the "trial court has broad discretion to decide the best interest of a child." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

Although an appellant may raise sufficiency of the evidence issues, "[l]egal and factual insufficiency challenges are not independent grounds for asserting error in custody determinations, but are relevant factors in assessing whether the trial court abused its discretion." *In re A.L.E.*, 279

S.W.3d at 427 (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision." *In re K.S.*, 492 S.W.3d 419, 426 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *accord In re A.L.E.*, 279 S.W.3d at 428.

**B.     Evidentiary Standard**

In a conservatorship determination, an order appointing a nonparent as a managing conservator must meet only a preponderance-of-the-evidence standard. *See* TEX. FAM. CODE ANN. § 105.005; *In re J.A.J.*, 243 S.W.3d at 616; *In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.).

**C.     Discussion**

At trial, the Department's representative (Mom's caseworker) testified regarding Mom's and the children's circumstances—which the trial court could use to evaluate the best interests of the children. *See* TEX. FAM. CODE ANN. § 263.307 (statutory factors[i]); *Holley v. Adams*, 544 S.W.2d 367, 371 (Tex. 1976) (*Holley* factors[ii]).

Initially, the children were removed because Mom and Dad had ongoing domestic violence issues. *See* TEX. FAM. CODE ANN. § 263.307(b)(7), (12)(E); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (G)). Following removal, Mom failed to provide proof of stable housing and employment. *See* TEX. FAM. CODE ANN. § 263.307(10), (12); *Holley*, 544 S.W.2d at 371–72 (factors (D), (G)). The representative testified that it was not in the children's best interest to be placed with Mom, that visitation should be restricted, and that Grandma was in the best position to be the primary managing conservator for the children. *See* TEX. FAM. CODE ANN. § 263.307(1), (7), (10), (12), (13); *Holley*, 544 S.W.2d at 371–72 (factors (B), (C), (D), (G).

Mom did not object to the testimony, but she provided testimony in response to the Department's evidence. She testified that, contrary to her caseworker's testimony, she had emailed

her paystubs to the caseworker. Mom also testified that her children should be allowed to stay with her at her mother's house. The Department objected to the children staying with Mom at her mother's house because of her mother's CPS history. The trial court adopted the Department's recommendation and noted that Mom needed to show more progress before it would consider a more permissive visitation plan.

## CONCLUSION

Having reviewed the record under the applicable standards of review, we conclude the evidence was legally and factually sufficient to support the trial court's conservatorship order, and the trial court acted within its discretion. *See In re K.S.*, 492 S.W.3d at 426; *In re A.L.E.*, 279 S.W.3d at 428. We overrule Mom's sole issue, and we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts should consider in determining the best interest of a child:
  (1) the child's age and physical and mental vulnerabilities;
  (2) the frequency and nature of out-of-home placements;
  (3) the magnitude, frequency, and circumstances of the harm to the child;
  (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;
  (5) whether the child is fearful of living in or returning to the child's home;
  (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;
  (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;
  (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;
  (9) whether the perpetrator of the harm to the child is identified;
  (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;
  (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;
  (12) whether the child's family demonstrates adequate parenting skills; . . . and
  (13) whether an adequate social support system consisting of an extended family and friends is available to the child.
TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[ii] *Holley* Factors. The Supreme Court of Texas identified the following factors that courts have used to determine the best interest of a child:
  (A) the desires of the child;
  (B) the emotional and physical needs of the child now and in the future;
  (C) the emotional and physical danger to the child now and in the future;
  (D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;
(F) the plans for the child by these individuals or by the agency seeking custody;
(G) the stability of the home or proposed placement;
(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and
(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).